PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:22-CR-609-2 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FREDDIE SANCHEZ, | ) | |
| | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 63] |

Pending before the Court is the Government's Notice of Intent to Introduce Evidence Under Rule of Evidence 404(b).  (ECF No. 63).  Defendant Freddie Sanchez responded in opposition (ECF No. 64).  The Court conducted a hearing on November 12, 2024.  Having heard the arguments of counsel, reviewed the record, the parties' briefs, and the applicable law, for the reasons provided below, the Court grants the Government's motion to admit the evidence as *res gestae*, or, in the alternative, under Fed. R. of Evid. 404(b).

## I. Background

Sanchez is charged with participating in a conspiracy to possess with intent to distribute cocaine and the possession with intent to distribute a mixture containing a detectable amount of cocaine.  In the case before the undersigned, Sanchez's Co-Defendant, Akeem Stafford has pleaded guilty and awaits sentencing.

Sanchez has also been charged in a case pending before a judge sitting in the Western Division of this district.  Sanchez's involvement in both cases, in the eyes of the Government, is

(1:22-CR-609)

inextricably intertwined.   The timing[1] of the cases overlap and Sanchez's alleged role in each is

consistent—he supplies cocaine for distribution.

The Government 's Notice of Intent to Introduce 404(b) evidence states, in pertinent part:

> In October 2020, the FBI began investigating Justin Stanley
> ("Stanley"), a fentanyl and cocaine supplier, who was centered in
> Marion, Ohio. The Stanley Drug Trafficking Organization ("Stanley
> DTO") had supply connections to Chicago, Illinois, Lorain, Ohio,
> and Columbus, Ohio.  In September 2021, investigators developed
> a source that was able to begin providing information on the Stanley
> DTO (hereinafter, "CS #1"). In July 2022, investigators also
> obtained T-III authorization for various telephone lines and
> Stanley's SnapChat account. Thousands of communications were
> intercepted during the course of the T-III investigation and were
> used to identify co-conspirators and additional members of the
> Stanley DTO. On[]e such co-conspirator was Freddie Sanchez
> ("Sanchez").
>
> In Spring 2022, Detectives of the Lorain Police Department
> Narcotics Bureau received information from an anonymous source
> stating that Freddie Sanchez had been selling fentanyl and cocaine.
> The source claimed that Sanchez drove a pickup truck or a black
> sedan vehicle when he made his deliveries throughout the city of
> Lorain. The source observed approximately one ounce of pink
> fentanyl sitting on the passenger seat of Sanchez's vehicle. The
> source also stated that Sanchez lived at a residence on Estelle
> Avenue, Lorain, Ohio, where he also stashed narcotics and money.
> At the time, Sanchez was on federal supervised release and his
> parole approved address was on East 31st Street, Lorain, Ohio.
>
> ****
>
> On September 15, 2022, Postal Inspectors pulled the package
> addressed to Estelle Avenue and utilized a drug detection K9 to sniff
> the package(s) and ultimately alerted to the package. A search
> warrant was obtained and granted. The package was opened and
> found to contain a kilogram of cocaine.

---

[1]  The Superseding Indictment in the instant case involves criminal activity alleged to have
occurred between August 15, 2022 and September 15, 2022 (ECF No. 21).  The criminal conduct
charged in the Western Division is alleged to have occurred from September 2022 to June 2023.
*See* ECF No. 1, Case No. 1:23CR313.

(1:22-CR-609)

        Later, on September 15, 2022, Detective Payne received a phone call from SA Carty who advised that while postal inspectors investigated the aforementioned package, they came across a second package that was similar in nature as the previous mentioned package and was mailed from the same post office in Phoenix, Arizona. This package was also pulled and a K9 sniff was conducted. This resulted in a positive alert and a search warrant was obtained for the package. This package was also found to contain a kilogram of cocaine. A controlled delivery of the package was done at 3327 Camden Ave, which resulted in Akeem Stafford arriving and picking up the package. He was subsequently arrested and provided a Mirandized statement. Of note, both drug packages seized by investigators were sent from Arizona and mailed from the same post office in Phoenix, Arizona.

        Stafford stated his reason for fleeing from the police was that he knew the package he had picked up contained something illegal. He speculated the package might have contained cocaine, marijuana, cash, or guns, but denied knowing specifically what was inside. He was to be paid $2500 to pick up the package and deliver it to a location in Lorain by a male whom he identified as "Ricardo Ramon". Stafford met "Ricardo Ramon" when the two were incarcerated at the Federal Correctional Institution at Allentown, PA. "Ricardo Ramon" was from Arizona and was locked up on a drug conspiracy case at the time. Stafford stated that he had picked up similar packages almost every day for the past month from addresses in Lorain, Cleveland, Youngstown, and Akron.

        Through the investigative process, Detectives were aware that Akeem Stafford and Freddie Sanchez are closely related through friendship with one another. Stafford had been observed by investigators arriving at Sanchez's house on numerous occasions in recent days and weeks. Furthermore, the Lorain Police Narcotics Bureau had been advised that on September 15, 2022, an unknown female had arrived at the post office and attempted to retrieve the package that was destined for 3321 Estelle Ave. Unfortunately, prior to detectives arriving at the post office, this person had already left.

*See* United States' Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts

Pursuant to 404(b)  (ECF No. 63).

(1:22-CR-609)

# I.    Legal Standard

### A.  Admissibility of **Rule 404(B)** Evidence

Fed. R. of Evid. 404(b) permits the admissibility of evidence of crimes or other acts to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of accident."  In criminal cases, a prosecutor must provide "reasonable notice of any such evidence" that he "intends to offer at trial, so that the defendant has a fair opportunity to meet it."  Fed. R. Evid. 404(b)(3)(A).  If the prosecutor gives notice to use such evidence before trial, the notice must be written, and "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b)(3)(B)-(C).

"Evidence is admissible under Rule 404(b) only if it is relevant."  *Huddleston v. United States, 485 U.S. 681, 689 (1988)*.  In deciding the permissibility of introducing Rule 404(b) evidence, the district court employs a three-step process in which it must determine whether:

1.    the "other act" actually occurred,
2.    the evidence is offered for a permissible purpose, and
3.    its probative value is not substantially outweighed by unfair prejudice.

*United States v. Carter, 779 F.3d 623, 625 (6th Cir. 2015)* (quoting *United States v. De Oleo, 697 F.3d 338, 343 (6th Cir. 2012)*).

After determining that the evidence is admissible under Rule 404(b), the Court "must carefully identify in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden by Rule 404(b)."  *United States v. Johnson, 27 F.3d 1186, 1194 (6th Cir. 1994)*).

-   *Whether the "Other Act" Actually Occurred*

4

(1:22-CR-609)

To determine whether the act actually occurred, district courts "need not formally find by a preponderance of the evidence that the other act occurred before admitting 'other act" evidence; rather, they may admit this evidence as long as it would permit a jury to 'reasonably conclude that the act occurred and that the defendant was the actor.'"  *See United States v. Mabery* No. 23-5733, 2024 WL 4565573, at *3 (6th Cir. Oct. 24, 2024) (quoting *Huddleston*, 485 U.S. at 689).

- *Whether the Evidence is Offered for a Permissible Purpose*

Rule 404(b) "is a rule of inclusion, not exclusion," (*United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996)), and the consideration of "a[ny] material issue other than character" (*Huddleston\, 485 U.S. at 686*) can be a proper purpose.  The Sixth Circuit held that it is proper to admit evidence of other crimes in cases to prove specific intent crimes, such as to prove intent to engage in distribution of drugs.  *Myers*, 102 F.3d at 234 (citation omitted).  "[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise." *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (internal citations and quotation marks omitted).  To determine whether the evidence of other acts is probative of intent, courts look toward "whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific offense at issue."  *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002) (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)).

- *Whether the Probative Value of The Evidence is Substantially Outweighed by its Unfair Prejudice*

Defendants bear the burden of showing that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice.  *United States v. Ramer*, 883 F.3d 659, 670 (6th Cir. 2018) (citing Fed. R. Evid. 403).  "Evidence is unfairly prejudicial when it 'tends to suggest decision on an improper basis,' but is not unfairly prejudicial when it only damages the

5

(1:22-CR-609)

defendant's case due to the legitimate probative force of the evidence." *United States v. Houston,* 813 F.3d 282, 291 (6th Cir. 2016) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)). Even at the final step, the Court may consider the "the strength of the evidence establishing the similar act" when considering "the Rule 403 balancing." *Huddleston,* 485 U.S. at 689 n.6.

### B. *Res Gestae*

As stated above, Federal Rule of Evidence 404(b) limits the admission of evidence of a criminal defendant's prior bad act(s) (extrinsic evidence) to that introduced for an acceptable purpose. Separate and distinct from extrinsic evidence, is *res gestae* evidence (intrinsic evidence), which "does not implicate Federal Rule of Evidence 404(b)". *United States v. Churn,* 800 F.3d 768, 779 (6th Cir. 2015) (citation omitted). "Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Stafford,* 198 F.3d 248, *4 (6th Cir. 1999). In determining whether evidence is *res gestae*,

> the question is whether the evidence is properly admitted to provide the jury with a complete story of the crime on trial, whether its absence would create a chronological or conceptual void in the story of the crime, or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime.

*United States v. Owens,* 424 F.3d 649, 657 (7th Cir. 2005) (internal quotations omitted). The Sixth Circuit held that "trial court['s] [may] admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." *United States v. Potts,* 173 F.3d 430, *9 (6th Cir. 1999). Even if evidence is *res gestae*, district courts must determine whether the probative value of the evidence was not

6

(1:22-CR-609)

substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. *United States v. Joseph*, 270 Fed. Appx. 399, 406 (6th Cir. 2008) (per curiam).  Against this backdrop, the Court evaluates the government's proposed evidence.

### III. Analysis

**1. Defendant's July 27, 2022 Snapchat Communication Regarding 3321 Estelle Ave 44052**

The Government intends to introduce Sanchez's July 27, 2022 recorded Snapchat communication to Jason Stanley referencing 3321 Estelle Ave 44052. ECF No 63 at PageID #: 196-98.  The Government argues that this communication satisfies Rule 404(b)(2) because it establishes Sanchez's intent, knowledge, identity, and plan to distribute the kilogram of cocaine that he received by U.S. mail. ECF No. 63 at PageID #: 218-20.  Specifically, the Government argues that Sanchez's use of the Estelle address in this and the Western Division case establishes a common thread, the use of the Estelle property helps to establish Sanchez's identity, and his plan for drug distribution. ECF No. 63 at PageID #: 220.  In opposition, Sanchez contends that the Court should find the evidence inadmissible, because the associated Snapchat account does not identify him by name.[2] ECF No. 64 at PageID #: 243, 245-46.

---

[2] Sanchez's basis for the exclusion of Justin Stanley's alleged July 27, 2022 Snapchat communication to Sanchez merely recites the Government's intention to introduce the intercepted communication from the Western Division case, then provides a footnote asserting that "[t]he government does not acknowledge the Snapchat account alleged to be Sanchez is not in his name." ECF No. 64 at PageID #: 243 n.1.  Three pages later, Sanchez broadly characterizes that the Western Division case's "only purpose is to attack Sanchez's character and as such is inadmissible under Fed. R. 404(b)(2)". ECF No. 64 at PageID #: 246.  These arguments are vague and insufficient.  "[I]t is not the Court's task to construct those arguments that were not made by Defendants." *Rayburn v. Anderson*, No. 3:19-00828, 2021 WL 12097830, at *3 (M.D. Tenn. Mar. 12, 2021) (citing *Brenay v. Schartow*, 709 F.App'x 331, 337 (6th Cir. 2017) ("And while it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so.")

(1:22-CR-609)

Considering the recordings, testimony from CS, law enforcement's information, including the physical and pole camera surveillance from the controlled buy, in their totality, the Court finds that the act---Sanchez's transmission of the Estelle address---described in the July 27, 2022 Snapchat occurred.  *See* Case No. 1:23CR313, ECF No. 1 at PageID #: 30-32.

Because this case involves a conspiracy with intent to distribute, and possession with intent to distribute, Sanchez's intent is "material and automatically at issue."  *See* ECF No. 21 at PageID #: 62-63; *see also United States v. Mize*, 498 F. Supp. 3d 978, 983 (S.D. Ohio 2020) (citing *Johnson*, 27 F.3d at 1192).  The Government suggests, the 3321 Estelle Ave 44052 address has a common use in both cases for the distribution of cocaine, and both cases occurred reasonably close in time.  For this reason, the Court finds July 27, 2022 Snapchat is offered for a permissible purpose, because the Snapchat communication shows Sanchez's knowledge and plan for the cocaine re-distribution at 3321 Estelle Ave 44052, and his intent to illegally distribute the controlled substances.

While all evidence offered in a criminal case is prejudicial, the Court finds that the probative value in admitting the Snapchat communication is not substantially outweighed by unfair prejudice.  Any undue prejudice can be cured by a limiting jury instruction.  *United States v. Lattner*, 385 F.3d 947, 958 (6th Cir. 2004); *accord* Fed. R. Evid. 105.

The Court will permit the United States to present the July 27, 2022 Snapchat.

**2. The July 28, 2022, Meeting Between the CS and Stanley Where Stanley Identifies Sanchez as his Supplier.**

8

(1:22-CR-609)

The Government also seeks to introduce a recording of a meeting between CS and Jason Stanley, at which Stanley identifies Sanchez as Stanley's supplier. The Government intends to use the evidence to establish Sanchez's knowledge, identity, and plan to distribute the drugs that he received by U.S. mail. ECF No. 63 at PageID #: 218-19. Defendant rebuts that the Court should not admit the evidence, arguing that it constitutes hearsay because Sanchez is not a party to the conversation. ECF No. 64 at PageID #: 243. Defendant's rebuttal is not well taken.

### i. Justin Stanley's Statement Identifying Sanchez as His Supplier is Not Hearsay, Because It Satisfies *Enright*.

To admit the statements of a co-conspirator under Rule 801(d)(2)(E), a district court must find by a preponderance of the evidence that: (1) the conspiracy existed; (2) the defendant was a member of the conspiracy; (3) the statement was made while the conspiracy was ongoing; and, (4) the proffered statement was made in furtherance of the conspiracy. *United States v. Wilson,* 168 F.3d 916, 920 (6th Cir. 1999) (citation omitted). "We sometimes refer to this as an *Enright* finding."[3] *United States v. White,* 58 Fed.Appx. 610, 614 (6th Cir. 2003) (citing *Enright,* 579 F.2d at 986–87).

In determining the admissibility of the statement under Rule 801(d)(2)(E), district courts, on their own, may consider the content of the hearsay statement in weighing the evidence. *Bourjaily,* 483 U.S. at 181. Furthermore, "[t]o determine whether the offering party has made

---

[3] An "*Enright* finding" refers to a district court's finding pursuant to Fed. R. Evid. 104(a) as to whether the Government has met its burden of showing the proffered statement are co-conspirator statements for the Rule 801(d)(2)(E) hearsay exclusion. *See United States v. Enright,* 579 F.2d 980 at 986–87. In *Bourjaily v. United States,* 483 U.S. 171, 181 (1987), the Supreme Court determined that courts can consider the coconspirator statements themselves when assessing the admissibility requirements.

(1:22-CR-609)

the necessary showing, the court may 'admit the hearsay statements subject to connection later at trial[.]'" *United States v. Lora*, 210 F.3d 373, at *3 (6th Cir. 2000) (quoting *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979)).

 The Court finds that the Government established by a preponderance of evidence that a conspiracy existed, and that Sanchez was part of such conspiracy, because of the recording, the testimony from CS and law enforcement, and the physical and pole camera surveillance showing Sanchez's presence at the controlled buy on August 25, 2022.

 The Court also finds that the statement was made during and in furtherance of the conspiracy, because Justin Stanley, an alleged coconspirator, identified Sanchez as his supplier. "Courts have consistently allowed the admission of testimony against a defendant made by the defendant's coconspirator to a government agent." *United States v. Culberson*, No. 07-2390, 2009 WL 776106, at *4 (6th Cir. Mar. 24, 2009) (citing *United States v. Mooneyham,* 473 F.3d 280, 286 (6th Cir. 2007)); *see also United States v. Monus,* 128 F.3d 376, 393 (6th Cir. 1997) ("Statements that 'identify participants and their roles in the conspiracy' also qualify as statements made in further of the conspiracy.") (citation omitted).  In *Mooneyham*, the Sixth Circuit affirmed the admission of a coconspirator's recorded statement to an undercover agent. *Mooneyham*, 473 F.3d at 286-87.  The Sixth Circuit held that under Rule 801(d)(2)(E), the declarant "was indisputably Mooneyham's coconspirator, and the statement in question was clearly made in furtherance of the conspiracy because it was directed at a potentially recurring customer (Agent Williams) with the intention of reassuring him of Mooneyham's reliability as a [drug] supplier." *Id.* at 286 (alteration in original).

 Considering that the Government satisfied the requirement for establishing a co-conspirator statements under *Enright*, the Court rejects Sanchez's rebuttal that the recording

10

(1:22-CR-609)

constitutes hearsay, because the Rule 801(d)(2)(E) exception applies.  The Court must then

determine its admissibility as 404(b) evidence.

> ### ii.    The July 28 Recording also Satisfies Rule 404(b).

When the Court considers the July 28 recording along with testimony from CS, law

enforcement, the physical and pole camera surveillance from the controlled buy, in addition to

the grand jury finding probable cause established by the Western Division indictment, the Court

finds that the July 28 recording actually occurred.  *See* Case No. 1:23CR313, ECF No. 1 at

PageID #: 30-32.

The July 28 recording also serves a valid 404(b) purpose.  It identifies Sanchez as a

supplier, and illustrates his knowledge, intent, and plan to distribute the drugs, because the

"evidence relates to conduct that is 'substantially similar and reasonably near in time' to the

specific intent offense at issue" *United States v. Bell*, 516 F.3d 432, 443-44 (6th Cir. 2008)

(quoting *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002)).

The probative value of the July 28 recording is not substantially outweighed by unfair

prejudice, because the recording tends to make it more likely than not that Sanchez intended to

distribute the cocaine.  The Court will give the jury a cautionary instruction regarding the limited

permissible use of the evidence during the general jury instruction.

The Court will permit the United States to present evidence of the July 28 meeting.

> ### 3.    The August 25, 2022, Snapchat Conversation Between the CS and Jason Stanley; The Controlled Buy Involving Sanchez, Stanley, and the CS; and, the Pole Camera Footage Showing Sanchez Arrival and Departure From Stanley's Residence.

The Government seeks to admit the August 25, 2022, Snapchat conversation between CS

and Jason Stanley in which Stanley explains that his supplier was coming with the cocaine; the

controlled buy's audio recording involving Sanchez, Stanley, and the CS; and the pole camera

(1:22-CR-609)

footage showing Sanchez arriving and departing Stanley's residence.  ECF No. 63 at PageID #: 199-202.  The Government argues that the evidence will be used to establish Sanchez's knowledge, plan, and identity relative to the kilogram cocaine packages sent to Loraine.

When the Court considers the August 25, 2022 Snapchat conversation along with testimony from CS, law enforcement information, including the recording from the controlled buy, the physical and pole camera surveillance, in their totality, the Court finds that the events alleged to have occurred on August 25, 2022 actually occurred.

The Court finds that the August 25, 2022 Snapchat conversation, the recordings from the controlled buy, and the pole camera footage are offered for a permissible purpose, because they identify Sanchez as a supplier, show his knowledge and plan for the cocaine re-distribution at 3321 Estelle Ave 44052, and his intent to illegally distribute the controlled substances.

The Court also finds that the probative value of the August 25, 2022 Snapchat conversation, the recording from the controlled buy, and the pole camera footage is not substantially outweighed by unfair prejudice.   They are highly probative of Sanchez's involvement in drug distribution.  The evidence identifies Sanchez, shows his role in the drug supply chain, knowledge of the operation, and use of the 3321 Estelle Ave 44052 for distribution purposes.  While this evidence may be damaging, it is not unfairly prejudicial.  Rather, it is relevant to facts material to the instant case.  To minimize undue prejudice, the Court will issue a cautionary jury instruction, requiring the jury to only use the evidence for its limited permissible purposes.

The Court will permit the United States to present the August 25, 2022 Snapchat conversation, the recordings from the controlled buy, and the pole camera footage.

(1:22-CR-609)

### 4. *Res Gestae*

The United States also argues its proposed evidence is admissible as *res gestae* evidence. ECF No. 63 at PageID #: 196.  Defendant responds that the evidence cannot constitute *res gestae*, because the events taking place on August 25th, 2022 are "separate and distinct and not necessary or relevant to the delivery by mail of cocaine to a home in Lorain on September 15th, 2022, a month after the alleged controlled buy in Marion, Ohio." ECF No. 64 at PageID #: 248.

Given that the July 27, 2022 Snapchat communication, the July 28, 2022 recording, the August 25, 2022 Snapchat conversation, the August 25, 2022 controlled buy recording, and the August 25, 2022 pole camera footage occurred close in time, concern the same drug, and implicate similar locations and actors, the Court finds that the evidence is *res gestae* evidence.  The Court also finds that the probative value substantially outweighs the danger of unfair prejudice posed by the evidence, because the evidence provides the trier of fact with a more complete picture of Sanchez's identity, knowledge, intent, and plans.  Essentially, Sanchez was under law enforcement investigation.  The results of that investigation resulted in two indictments.  Sanchez has no legitimate basis to prevent evidence relevant to the instant case from being admitted simply because it emanated from an investigation that also led to another indictment, as explained herein. At trial, the Court will give the jury appropriate limiting instructions.

13

(1:22-CR-609)

## IV.

### Conclusion

  For the reasons above, the Government's evidence discussed herein will be admitted as *res gestae*, or in the alternative, pursuant to Rule 404(b), to show Sanchez's intent, knowledge, identity, and plan to distribute illegal drugs.  Sanchez's objections are overruled.


  IT IS SO ORDERED.


| December 20, 2024 | /s/ Benita Y. Pearson |
| --- | --- |
| Date | Benita Y. Pearson |
|  | United States District Judge |

14